ARENDS *v.* GRAND RAPIDS RAILWAY CO.

MASTER AND SERVANT — STREET RAILWAYS — COMMON CARRIERS—
    FELLOW-SERVANT—STATUTES—WORDS AND PHRASES.

    Street railways, being common carriers, are within the provis-
    ions of Act No. 104, Pub. Acts 1909, 2 How. Stat. (2d Ed.) §
    4110, which abrogates the fellow-servant doctrine as a de-
    fense; the terms "common carrier railroad company," as
    employed in the statute, include corporations operating as
    common carriers by electricity.[1]

Error to the Superior Court of Grand Rapids; Stuart,
J. Submitted June 17, 1912. (Docket No. 101.) De-
cided November 8, 1912. Rehearing denied January 3,
1913.

Case by Richard Arends against the Grand Rapids
Railway Company for personal injuries. An order sus-
taining a demurrer to plaintiff's declaration is reviewed
by plaintiff on writ of error. Reversed.

*E. A. Maher,* for appellant.

*Kleinhans & Knappen,* for appellee.

BIRD, J. While in the service of defendant, as a con-
ductor on one of its street cars in the city of Grand Rapids,
the plaintiff was injured. He concedes that his injuries
arose through the negligence of the motorman, his fellow-
servant, but insists that his case does not fail for that rea-
son, because it comes within the fellow-servant act, No.
104 of the Public Acts of 1909 (2 How. Stat. [2d Ed.]
§ 4110). The contention of defendant is that the act
applies only to railroads that are incorporated under the
general railroad act, and that it has no reference to street

    [1]As to whether a street or interurban railway is affected by abro-
gation of fellow-servant rule as to "railroads," see note in 17 L. R.
A. (N. S.) 117.

railways.    The sole question, therefore, presented for our solution is whether the act applies to street railways.

The title of the act is, " An act to prescribe the liability of common carrier railroad companies to their employés." The express language of section 1 of the act makes it applicable to "every common carrier railroad company in this State." It has been many times held by the courts that the term "railroad" is broad enough to include street railways.  *Johnson's Adm'r* v. *Railway Co.*, 10 Bush (Ky.), 231; *Lieberman* v. *Railroad Co.*, 141 Ill. 140 (30 N. E. 544); *Stillwater, etc., R. Co.* v. *Railroad Co.*, 171 N. Y. 589 (64 N. E. 511, 59 L. R. A. 489); *Rafferty* v. *Traction Co.*, 147 Pa. 579 (23 Atl. 884, 30 Am. St. Rep. 763); *Katzenberger* v. *Lawo*, 90 Tenn. 235 (16 S. W. 611, 13 L. R. A. 185, 25 Am. St. Rep. 681); *Savannah, etc., Railway* v. *Williams*, 117 Ga. 414 (43 S. E. 751, 61 L. R. A. 249).    The last case cited is especially interesting because the act there construed was one which made railroad companies liable to one servant for injuries inflicted by the negligence of a fellow-servant.    It has also been held that street railways are common carriers.    36 Cyc. p. 1348; 5 Am. & Eng. Enc. Law (2d Ed.), p. 481.

I am of the opinion that this construction should prevail in this case, inasmuch as there is nothing in the context of the act to indicate that it is to be restricted to any particular class of common carrier railroads.    Had the legislature simply used the word "railroad" instead of "every common carrier railroad," there might be room to argue from previous legislation in this State that it had reference only to the general railroad act, but, when it in express words includes every common carrier railroad, we must assume that the legislature intended it to include street railroads.    This construction seems to be strengthened by section 3 of the act, wherein the legislature itself undertook to define what it meant by the term "railroad company:"

"SEC. 3. The words 'railroad company,' as used in

172 MICH.—29.

this act, shall be taken to embrace any company, association, corporation, company, or person managing, maintaining, operating, or in possession of a common carrier railroad in whole or in part within this State," etc.

It is clearly indicated by this section that the term "railroad company" was not to be construed as applying to companies incorporated under the railroad act only, but was intended to apply to every railroad which is a common carrier. The object of this legislation was to change the fellow-servant rule, and make all companies or persons coming within the act liable to their servants for personal injuries inflicted on them by the negligence of their fellow-servants. No good reason suggests itself why the act is not as applicable to street railways as steam railways. Counsel argue that the difference in construction, operation, rolling stock, and motive power furnishes a reason for saying it applies to one, and not the other. This argument would have had more force in the early days of street railways, when these differences were more marked than they are at the present time. With the adoption of a dangerous motive power, heavier rolling stock, and increased speed by the street railways, has come an army of employés who are daily subjected to hazards not unlike those encountered on steam railroads. It is not unreasonable to assume that the legislature, in the passage of this act, recognized these changes, and the added risks which have come with them, and used the term "every common carrier railroad" to include them within the protection of the act. If the legislature did not so intend, it was most unfortunate in using a term within which street railways could be so easily included. Further, it is reasonable to conclude that, had the legislature not intended the act to apply to street railways, it would have made an exception of them. It failed to do so, and it is not the province of this court to make an exception where the legislature has made none. The rule of construction is that the exception, if any, shall appear in

the act. *Johnson's Adm'r* v. *Railway Co.*, 10 Bush (Ky.), 231.

The judgment of the trial court will be reversed, and, as the question was raised by demurrer, the defendant will be given an opportunity to plead.

MOORE, C. J., and STEERE, McALVAY; BROOKE, STONE, and OSTRANDER, JJ., concurred.